# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY WILSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 10-03217-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |

## PROCEEDINGS

On May 3, 2010, Tracy M. Wilson ("Plaintiff" or "Claimant" or "Wilson") filed a complaint seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on January 3, 2011. On April 6, 2011, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and

remanded for further proceedings in accordance with law and this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff is a 36 year old female who alleged bilateral carpal tunnel syndrome, tendonitis in arms and back, bilateral hip injuries, pain in back, shoulders, neck and arms, dyslexia, and cardiac complications. (AR 124-25.) Plaintiff alleged disability beginning April 29, 2007. (AR 10.)

Plaintiff's claims were denied initially on December 19, 2007, and on reconsideration on April 29, 2008. (AR 10.) She filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Mary Everstine on September 8, 2009, in Santa Barbara, California. (AR 10.) Claimant and her husband, Jose Uribe, appeared and testified. (AR 10.) Vocational expert ("VE") Elizabeth Cerezo-Donnelly also testified. (AR 10.) Claimant was represented by counsel. (AR 10.)

The ALJ issued an unfavorable decision on October 29, 2009. (AR 10-18.) The Appeals Council denied review on May 3, 2010. (AR 1-3.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ properly rejected the testimony of Plaintiff's husband.
2. Whether the ALJ properly rejected the opinion of Dr. Diaz, Plaintiff's treating physician.
3. Whether the ALJ's mental residual functional capacity assessment finding properly incorporates the evidence of record and the ALJ's own findings.
4. Whether the ALJ properly evaluated Plaintiff's subjective complaints.
5. Whether the ALJ properly determined that there were other jobs Plaintiff could perform.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla' . . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is

engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

**THE ALJ DECISION**

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since April 29, 2007, the alleged onset date. (AR 12.)

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: major depressive disorder, panic disorder, myofascial neck strain, fibromyalgia, and a history of myocarditis. (AR 12.)

At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment. (AR 12.)

The ALJ then determined that Wilson has the residual functional capacity to perform light work except for limitations to occasional above shoulder reaching and simple repetitive tasks. (AR 13.) In determining Plaintiff's RFC, the ALJ made an adverse credibility finding. (AR 15.)

Based on Plaintiff's RFC, the ALJ found that Wilson is unable to perform her past relevant work as a hand packager, clerk, or fast food worker. (AR 16-17.)

Nonetheless, at step five, the ALJ determined with the aid of VE testimony that there are jobs in the national economy in significant numbers that Plaintiff can perform. (AR 17-18.) These jobs include collator and table worker, both unskilled. (AR 17.)

Hence, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 18.)

**DISCUSSION**

The ALJ decision is legally flawed in several respects and must be reversed. Fundamentally, the ALJ decision fails to offer sufficient analysis of Plaintiff's soft tissue pain conditions of fibromyalgia and myofascial strain, or to develop the record properly on those conditions. The ALJ improperly discounted Plaintiff's credibility. The ALJ improperly rejected

the opinion of Plaintiff's treating physician as to Plaintiff's fibromyalgia symptoms. The ALJ improperly failed to consider the lay witness testimony of Plaintiff's husband. The ALJ failed to consider the combined effect of Plaintiff's multiple medical conditions and multiple medications on her ability to work. These errors undermine the ALJ's RFC and step five determination that Plaintiff can perform other jobs in the national economy.

I.   **PLAINTIFF'S FIBROMYALGIA**

Plaintiff was hospitalized in April 2007 for chest pain due to postpartum myocarditis. (AR 14.) Subsequently, she was diagnosed with carpal tunnel syndrome, major depressive disorder, panic disorder, and back pain. (AR 14.) Dr. Julio Diaz was Plaintiff's primary treating physician from 2007 through 2009. (AR 179.) Dr. Diaz filed a letter, dated August 26, 2009, that set forth his diagnoses of fibromyalgia, carpal tunnel syndrome, severe depression, anxiety, post-traumatic stress disorder, and attention deficit disorder. (AR 179-80.) He stated that Plaintiff suffers from chronic neck, shoulder and back pain, and chronic fatigue from fibromyalgia. (AR 179.) A consulting examiner, Dr. Hsien Young, also found that Claimant had multiple trigger points on soft tissue palpation coinciding somewhat to fibromyalgia trigger points in the posterior trunk and extremities, but "the full fibromyalgia examination was not done." (AR 246.) Plaintiff takes the following medications for her fibromyalgia and other medical conditions: Clonazepam, Cymbalta, Depakote, Wellbutrin, Gabapursin, Temazepam, Spironolactone, Opana, Oxymorphone, Vicodin, Prozac, Neurontin, Percocet, Opana, Lorazepam, Ambien, and Klonopin. (AR 43, 130, 160, 235-239, 245, 255, 258, 309-10, 350-51.) These medications help somewhat but do not reduce the pain enough to keep it from severely reducing her activities. (AR 179.) Plaintiff's husband testified that he had to stop working to care for his wife and children because Plaintiff's medications interfere with her ability to care for the children and "she spends most of the day in bed with one good day a week." (AR 16.) He testified at hearing that her condition had gotten worse. (AR 52.)

Plaintiff's primary alleged disability is pain from fibromyalgia. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). In Benecke, the Ninth Circuit determined that fibromyalgia can be disabling. It described fibromyalgia as follows:

> Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. *See, e.g., Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc.*, 125 F.3d 794, 796 (9th Cir. 1997); *Brosnahan v. Barnhart,* 336 F.3d 671, 672 n. 1 (8th Cir. 2003). Common symptoms, all of which Benecke experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. *See Brosnahan*, 336 F.3d at 672 n. 1; *Cline v. Sullivan*, 939 F.2d 560, 563 (8th Cir. 1991). Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. *See Jordan v. Northrop Grumman Corp.*, 370 F.3d 869, 872 (9th Cir. 2004); *Brosnahan*, 336 F.3d at 672 n. 1.

Id. at 589-90; see also Harman v. Apfel, 211 F.3d 1172 (9th Cir. 2000) (reversing ALJ decision denying benefits for fibromyalgia); Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (upholding benefits for fibrositis, now known as fibromyalgia).

1    Jordan v. Northrop Grumman Corp., 370 F.3d 869, 877 (9th Cir. 2003), a case in
which benefits were denied for fibromyalgia, recognized that the accepted diagnostic test is
that Plaintiff must have pain in 11 of 18 tender points.  See also Rollins v. Massanari, 261
F.3d 853, 855 (9th Cir. 2001) (11 of 18 tender points).  Objective tests such as myelograms
are administered to rule out other diseases and alternative explanations for the pain but do
not establish the presence or absence of fibromyalgia.  Jordan, 370 F.3d at 873, 877.  It
cannot be objectively proved.  Id. at 877.  The symptoms can be worse at some times than
others.  Id. at 873.  The Ninth Circuit recognizes fibromyalgia as a physical rather than a
mental disease.  Id.  Myofascial pain syndrome is also a muscle pain, soft tissue condition.
The Merck Manual 481 (17th ed. 1999).

**II.	THE ALJ FAILED TO DEVELOP THE RECORD PROPERLY**

   The ALJ failed to develop the record properly in this case by not retaining a rheumatologist to ascertain more definitively the nature and severity of Plaintiff's fibromyalgia and myofascial strain conditions.  In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d 1273, 1288 (9th Cir. 1996); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  The ALJ has a basic duty to inform himself about facts relevant to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, Jr., concurring).  The ALJ's duty to develop the record fully exists even when the claimant is represented by counsel and is "heightened" when the claimant may be mentally ill and unable to protect his or her interests.  Tonapetyan, 242 F.3d at 1150.  Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to "conduct an appropriate inquiry."  Id.  The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing the hearing or keeping the record open after the hearing to allow supplementation of the record.  Id.; Smolen, 80 F.3d at 1288.

The ALJ relied on the opinions of state reviewing physician and Dr. Young to reject the opinion of Dr. Diaz regarding the severity of Plaintiff's fibromyalgia. (AR 16.) As non-examining physicians, the state doctors' opinions are not substantial evidence that justifies rejection of a treating physician opinion unless consistent with and supported by other independent evidence in the record. <u>Lester</u>, 81 F.3d at 830-31; <u>Morgan</u>, 169 F.3d at 600. Dr. Young found evidence of fibromyalgia but the full fibromyalgia examination was not done. (AR 246.) Nor did Dr. Young have a myelogram done to exclude other causes of Plaintiff's pain.

Dr. Young opined that Plaintiff could do medium work <u>but he saw Plaintiff only once in 2007</u>. By contrast, Dr. Diaz saw Plaintiff on numerous occasions from 2007 to 2009. Plaintiff says that Dr. Diaz reported the presence of tender points (JS 19), but the Court finds no reference to tender points in his treatment notes. Nor was a myelogram done to exclude other causes. Plaintiff describes Dr. Diaz as a family practitioner with training in mood affective disorders and other mental health problems. He is not a rheumatologist; nonetheless, he reports fibromyalgia symptoms – symptoms Dr. Young also diagnosed as fibromyalgia. Additionally, Plaintiff's husband testified that he had to quit work because Plaintiff was no longer able to take care of their children and spends most of her day in bed. (AR 16.) He testified at hearing that she had gotten worse. (AR 52.)

Dr. Young's <u>single</u> assessment of Plaintiff's condition in 2007 is insufficient to offset two years of observations by Dr. Diaz through 2009 and the fact that Plaintiff's husband had to quit his job because Plaintiff could no longer care for their children. This is particularly true because Dr. Young diagnosed possible fibromyalgia but never tested for it. There was enough evidence of fibromyalgia that the ALJ should have developed the record more fully. The record here is simply too ambiguous, incomplete, and insufficient to assess the nature and severity of Plaintiff's fibromyalgia/myofascial strain. The ALJ should have ordered a consulting examination by a rheumatologist, which is the proper specialty for evaluating

Plaintiff's fibromyalgia. Benecke, 379 F.3d at 594 n.4 ("[r]heumatology is the relevant speciality for fibromyalgia").

## III. THE ALJ'S ADVERSE CREDIBILITY FINDING IS NOT SUPPORTED BY CLEAR AND CONVINCING REASONS

Plaintiff challenges the ALJ's adverse credibility finding regarding Plaintiff's subjective pain allegations. (AR 15-16.) The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1281-82 esp. n.2 (9th Cir. 1996). The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345. If the ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 949, 958 (9th Cir. 2002); see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

In this case, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to produce the alleged pain but the symptoms are not credible to the extent they are inconsistent with her RFC. (AR 15.) There was no assertion that Plaintiff was malingering. Thus, the ALJ was required to offer specific, clear and convincing reasons for discounting Plaintiff's subjective pain symptoms. The ALJ did not do so as to Plaintiff's fibromyalgia/myofascial strain conditions.

The Court already has ruled that the medical evidence as to Plaintiff's fibromyalgia is ambiguous and not sufficient to assess its severity. Additionally, the ALJ's discrediting of Plaintiff's credibility because "treating physicians responded with limited and conservative care" (AR 16) is inconsistent with the current state of medical knowledge about fibromyalgia. The condition has no cure and Dr. Diaz was prescribing numerous medications. (AR 179.) The Commissioner argues that Dr. Diaz did not refer Plaintiff to a pain management program for nerve blocks, trigger point injections and other aggressive treatment (JS 15) but cites no medical evidence that such referrals are the standard method of treating fibromyalgia. An ALJ may not make his own medical assessments. Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (the ALJ must not succumb to the temptation to play doctor and make [his] own independent medical findings), citing Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Again, there is no cure for fibromyalgia. Benecke, 379 F.3d at 589-90. There is no evidence in the record from any physician that anything more could have been done that would have alleviated Plaintiff's symptoms. Limited and conservative care is not a clear and convincing reason for discounting Plaintiff's subjective symptoms as to her fibromyalgia.

The only other reason offered for discrediting Plaintiff's credibility was that "she was able to play with her young children, an activity inconsistent with the complete inability to function indicated by Dr. Diaz." (AR 16.) The ALJ's assertion is not supported by substantial evidence. Dr. Diaz did not say that Plaintiff was completely unable to function. He said that pain and fatigue limit her "to no more than 45 minutes to an hour at a time, and no more than 3 or 4 hours cumulatively." (AR 179.) His letter says she is "severely" or "markedly" limited in her ability to function (AR 179), not that she was completely unable to function.

There was considerable evidence from Plaintiff and her husband that she no longer can take care of her children. (AR 16, 43-45, 50, 52.) Plaintiff has stated repeatedly she can no longer care for her children and spends most of the day in bed. (AR 43-45, 146.) Her husband had to quit his job to take care of the children. (AR 16.) The ALJ cites to but one unexplained comment made to Dr. Wendel, a psychologist consulting examiner, that, "She plays with the children." (AR 258.) This statement could have referred to board games or

activities of limited physical exertion, and the nature of fibromyalgia is that there are good days and bad days. There is no indication how long she was able to play with her children or what impact it had on her. There is too much evidence of Plaintiff's inability to care for her children to discredit her credibility over one ambiguous comment.

The ALJ's adverse credibility determination is not supported by clear and convincing reasons as to Plaintiff's fibromyalgia.

## IV. THE ALJ IMPROPERLY REJECTED THE TREATING PHYSICIAN'S OPINION

Plaintiff next challenges the ALJ's rejection of the opinion of Plaintiff's treating physician, Dr. Julio Diaz. Dr. Diaz treated Plaintiff from 2007 to 2009. He filed a two page letter summarizing his diagnoses and setting forth numerous functional limitations. (AR 179-80.) He submitted over 30 pages of treatment notes. (AR 235-42, 304-10, 340-52.) The ALJ rejected Dr. Diaz's opinion rather summarily because objective examination findings were insufficient to support his opinion, Plaintiff's subject medical history "appears to be the basis for his conclusions," objective neurological examination findings support the RFC, and Plaintiff was able to play with her children. (AR 16.) The ALJ's reasons are not supported by substantial evidence.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

1       Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

      Once again, in assessing Dr. Diaz's opinion, the ALJ fails to appreciate the state of medical knowledge about fibromyalgia. As already observed, there is no way to confirm absolutely a diagnosis of fibromyalgia; the disease is diagnosed entirely on the basis of patient reports. Benecke, 379 F.3d at 589-90. Thus, the ALJ's rejection of Dr. Diaz's opinion, because it was based on Wilson's reported symptoms, was improper. So was the ALJ's rejection of Dr. Diaz's opinion, because there were no objective examination findings. Again, there is no objective laboratory testing that can establish fibromyalgia. The ALJ erred by effectively requiring objective evidence for a disease that "eludes such measurement."

Benecke, 379 F.3d at 594.  The Court already has rejected the ALJ's reliance on Plaintiff's unexplained comment that she plays with her children.

The ALJ obviously relied primarily on Dr. Young's opinion that Plaintiff can perform medium work.  Yet Dr. Young's opinion actually confirmed Dr. Diaz's opinion to some extent.  Dr. Young diagnosed Plaintiff with myofascial neck sprain and possible fibromyalgia.  He found evidence of tender points but did not complete a full fibromyalgia examination.  Nor was a myelogram done.  Dr. Young only saw Plaintiff once in 2007.  Dr. Diaz found severe fibromyalgia symptoms over a two year period from 2007 to 2009.  Dr. Young's opinion is not sufficient to offset Dr. Diaz's opinion or the lay witness testimony of Plaintiff's husband who noted Plaintiff had gotten worse.  (AR 52.)  As already observed, the ALJ failed to develop the record properly.  The proper way to resolve the severity of Plaintiff's fibromyalgia is by retaining a rheumatologist as a consulting examiner, conduct a full fibromyalgia examination and have a myelogram done.

The ALJ did not have specific, legitimate reasons for rejecting Dr. Diaz's opinion.[2]

## V.    THE ALJ IMPROPERLY DISREGARDED LAY WITNESS TESTIMONY

Plaintiff's husband provided important testimony that he had to quit his job to take care of the children because Ms. Wilson no longer could do so.  Plaintiff's husband, Jose Uribe, indicated that medication interferes with Claimant's ability to care for the children and "spends most of the day in bed, with one good day a week." (AR 16.)  Uribe's testimony is consistent with Dr. Diaz' letter noting Wilson's chronic fatigue. (AR 179.)  The ALJ decision describes Uribe's testimony but never sets forth any reasons or evidence that would justify disregarding it.  This was error that was not harmless.

Lay witness testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such

---

[2] The ALJ criticizes Dr. Diaz's reference to failed surgery in view of Plaintiff's testimony she has not had surgery.  (AR 16.)  The only "failed surgery" was that surgery was not an option for her carpal tunnel condition.  (AR 43, 238.)  The confusion over this point hardly is a basis for rejecting Dr. Diaz's opinion, especially in as much that the reference to surgery was not in regard to Plaintiff's fibromyalgia.

14

testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Smolen, 80 F.3d at 1288-89 (to reject lay witness testimony, ALJ must make findings "germane to each witness, and supported by substantial evidence"). The reasons germane to each witness must be specific. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). Lay witness testimony cannot be disregarded without comment. Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006). In rejecting lay witness testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The failure to address lay witness evidence is not harmless unless the Court can conclude confidently that no reasonable ALJ, on crediting the testimony, would reach a different disability determination. Stout, 454 F.3d at 1054-56.

The Commissioner agues that his reason for rejecting Plaintiff's credibility, i.e., Plaintiff plays with her children, applies equally to Uribe's testimony and thus any error in not commenting on Uribie's testimony was harmless. The Court, however, already ruled that the ALJ's reliance on Plaintiff's statement that she plays with her children was improper. Nor can the statement be a basis for disregarding Uribe's testimony.

Also of significance is Uribe's statement that Plaintiff's inability to care for her children is due to her medications. An ALJ should consider all facts that might have a significant impact on an individual's ability to work, including side effects of medications. SSR 96-7p; Erickson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing Varney v. Secretary of HHS, 846 F.2d 581, 585 (9th Cir. 1987) (superseded by statute on other grounds, see Bunnell v. Sullivan, 912 F.2d 1149, 1153-54 (9th Cir. 1990)). Under Varney, an ALJ may not reject a claimant's testimony about the subjective limitations of medication side effects without making specific findings similar to those required for excess pain testimony. Varney, 846 F.2d at 585. Varney is a case in which the claimant testified that her medications caused fairly severe side effects. Id.

The ALJ erred in failing to comment on Uribe's testimony attributing her inability to care for her children to medication side effects. The error is not harmless because, if credited as to Wilson's need to lay down, she would not be able to work according to the VE. (AR 57.) The ALJ also erred in not developing the record as to the impact of Plaintiff's medications on her ability to work.

**VI.  THE ALJ FAILED TO CONSIDER PLAINTIFF'S MULTIPLE IMPAIRMENTS IN COMBINATION WITH EACH OTHER**

The ALJ opinion here never considers Plaintiff's multiple impairments and multiple medications <u>in combination</u>. This was error. A claimant's illness "must be considered in combination and must not be fragmentized in evaluating their effects." <u>Beecher v. Heckler</u>, 756 F.2d 693, 694-95 (9th Cir. 1985). The ALJ must consider the combined effect of all of a claimant's impairments on his or her ability to function "without regard to whether each alone was sufficiently severe." <u>Smolen</u>, 80 F.3d at 1290.

In addition to fibromyalgia, the ALJ found that Plaintiff also suffered from the severe impairments of major depressive disorder, panic disorder and a history of myocarditis. (AR 12.) Additionally, Plaintiff is taking multiple medications for multiple medical impairments. The ALJ erred by failing to consider Plaintiff's multiple impairments and multiple medications <u>in combination with each other</u>.

The ALJ also summarily dismisses the evaluation of the consulting psychologist examiner Dr. Wendel because her opinion is based on pain, which is outside her expertise. (AR 16.) Yet Dr. Wendel certainly was qualified to assess Plaintiff's mental and emotional state, and opined, "She likely would evidence repeated episodes of emotional episodes of emotional deterioration in work-like situations." (AR 261.) The ALJ never addressed this opinion, singly or in combination with Plaintiff's fibromyalgia.

* * * *

The ALJ's errors undermine the RFC and the step five determination that Plaintiff can perform other work in the national economy. Thus, there is no need to address these issues at this stage. On remand, after further developing the record on Plaintiff's fibromyalgia, the

ALJ should reassess Plaintiff's RFC and then begin anew with step five of the sequential process.

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding the case for further proceedings in accordance with law and this Memorandum Opinion and Order.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 12, 2011            */s/ John E. McDermott*
                                                        JOHN E. MCDERMOTT
                                       UNITED STATES MAGISTRATE JUDGE